**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

HAROLD WERKHEISER, Individually and
in his Official Capacity as a Supervisor of
Pocono Township,

      Plaintiff,

          v.

POCONO TOWNSHIP, FRANK HESS,
Supervisor, and HENRY BENGEL,
Supervisor,

      Defendants.

CIVIL ACTION NO. 3:CV-13-1001

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants Pocono Township, Frank Hess, and Henry Bengel's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 9.) Plaintiff Harold Werkheiser is an elected Supervisor and former Roadmaster of Pocono Township. He contends that he was not reappointed Roadmaster because he engaged in protected First Amendment conduct and that his replacement was appointed in violation of Pennsylvania's Second Class Township Code and the Sunshine Act. In their motion to dismiss, Defendants argue that the Amended Complaint fails to state claims for First Amendment retaliation or violation of the Sunshine Act. Individual Defendants also assert that they are entitled to absolute legislative and qualified immunity. Because the Amended Complaint adequately states claims for First Amendment retaliation and violation of the Sunshine Act and individual Defendants are not entitled to absolute legislative or qualified immunity based on the facts as alleged by Plaintiff, the motion to dismiss will be denied.

### I. Background

The Amended Complaint alleges the following:

Plaintiff Harold Werkheiser ("Werkheiser") is an elected official serving on the three-

member Board of Supervisors of Pocono Township. (*Am. Compl.*, ¶ 2.) Defendants Frank Hess ("Hess") and Henry Bengel ("Bengel") are the other elected Pocono Township Supervisors. (*Id*. at ¶ 4.) Werkheiser was elected to a six-year term as Supervisor in 2007, Hess was elected to a six-year term in 2009, and Bengel was elected to a six-year term in 2011. (*Id*. at ¶¶ 2, 4.) Defendant Pocono Township (the "Township") is a Second Class Township within the County of Monroe, Pennsylvania. (*Id*. at ¶ 3.)

Township Supervisors are permitted to hold positions of employment, such as Roadmaster, with the Township. (*Id*. at ¶ 6.) After thirteen (13) years of service on the Township road crew, Werkheiser was appointed Roadmaster in 2008. (*Id*. at ¶ 7.) He was reappointed as Roadmaster every year thereafter through and including 2012. (*Id*. at ¶ 7.)

When Hess campaigned for Supervisor in 2009, he ran on a platform of fiscal change. (*Id*. at ¶ 8.) He claimed if he was elected he would work for the Township without wages, performing administrative duties consistent with his years operating a plumbing business. (*Id*.) Bengel campaigned on a similar platform, and he pledged not to accept employment with the Township. (*Id*. at ¶ 9.) When Bengel was elected, he filled Jane Cilurso's seat on the Board of Supervisors. (*Id*. at ¶ 10.) Jane Cilurso was the primary administrator of the Township at that time Bengel was elected. (*Id*.)

Hess began receiving wages in 2011, and in 2012 he took over the administrative duties formerly performed by Jane Cilurso. (*Id*. at ¶ 11.) Hess receives approximately $36,000 per year in salary, health insurance, and other employee benefits, and he has the titles of Chairman of the Board of Supervisors, Secretary, and Treasurer. (*Id*.)

Hess became temporarily disabled in January 2012, and he took leave from the Township for ten days. (*Id*. at ¶ 12.) During his absence, Frank Froio ("Froio") assumed Hess's administrative duties without appointment by the Board of Supervisors. (*Id*.) Froio was selected by a consultant to the Township, Richard Manfredi. (*Id*.) On February 6, 2012,

Bengel made a motion, seconded by Hess, to hire Froio as Township Administrator. (*Id*. at ¶ 14.) Froio's compensation was set at $45.00 per hour for thirty (30) hours per week, approximately $70,000 annually. (*Id*.) Werkheiser voted against the motion, but the motion carried. (*Id*.)

As Froio's position developed, Hess's responsibilities and workload decreased. (*Id*. at ¶ 15.) Hess, however, continued to collect approximately the same compensation. (*Id*.)

Werkheiser voiced his objection to the cost to the Township and the creation of a new position with more expense. (*Id*. at ¶ 16.) Werkheiser also objected to paying Hess when his duties were being performed by Froio. (*Id*.) Werkheiser similarly opposed the appointment of an outside grant writer on the basis that grant-writing should be performed by Froio and Hess. (*Id*.)

Thereafter, in or about December 2012, Hess and Bengel decided to replace Werkheiser as Roadmaster by denying him annual reappointment for 2013. (*Id*. at ¶ 17.) Although the termination of Werkheiser and appointment of Bengel as Roadmaster/Director of Public Works was formally accomplished at a noticed reorganization meeting on January 7, 2013, deliberations and decisions occurred outside of that meeting. (*Id*. at ¶ 28.)

On December 14, 2012, at a meeting at Bengel's home, Bengel gave Hess a letter stating his interest in becoming Roadmaster. (*Id*. at ¶ 29.) Werkheiser was not at the meeting at Bengel's home, nor was he provided a copy of the letter. (*Id*. at ¶¶ 29-30.) Hess and Bengel then confided their plan to appoint Bengel as Roadmaster with other Township officials, including Froio and Township attorneys Jeffrey Durney and Jeffrey Stewart. (*Id*. at ¶ 31.)

On December 18, 2012, Hess and Froio met with Stewart to discuss whether Werkheiser would have the right to return to a position on the road crew if he was not reappointed Roadmaster. (*Id*. at ¶ 32.) Werkheiser was not made aware of this meeting.

(*Id*.)  Bengel also discussed with Durney whether he could vote for himself for the Roadmaster position. (*Id*. at ¶ 33.)  Upon confirming that he could vote for himself, Bengel resigned from his private employment. (*Id*.)  Thereafter, at the January 7, 2013 reorganization meeting, Werkheiser was replaced as Roadmaster by Bengel. (*Id*. at ¶¶ 28, 34.)  But Bengel and Hess did not disclose at the meeting their private deliberations and predetermination to appoint Bengel as Roadmaster. (*Id*. at ¶ 34.)

As a result of the foregoing, Plaintiff commenced the action in the Court of Common Pleas of Monroe County, Pennsylvania.  On April 18, 2013, Defendants removed the action to this Court, and Werkheiser subsequently filed the Amended Complaint.  The Amended Complaint asserts claims for First Amendment retaliation (Count I) and violation of the Second Class Township Code and Pennsylvania Sunshine Law (Count II).  With respect to the First Amendment retaliation claim, Werkheiser contends that "[s]peech about overpayment for administrative duties was unrelated to the job of Roadmaster, and plaintiff's speech on these subjects was as a citizen and Supervisor responsible for the governance of the Township." (*Am. Compl.*, ¶ 19.)  This speech was a substantial and motivating factor in the decision to replace him as Roadmaster with Bengel. (*Id*. at ¶ 18.)

As to Count II, Werkheiser claims that Hess and Bengel violated the Second Class Township Code and the Sunshine Law by deliberating and taking action on the Roadmaster position as a partial board without notice to the public or himself as the third Supervisor. (*Id*. at ¶ 27.)

On May 31, 2013, Defendants filed a motion to dismiss the First Amendment retaliation and Pennsylvania Sunshine Act claims. (Doc. 9.)  Werkheiser filed a brief in opposition to the motion to dismiss on June 17, 2013 (Doc. 11), and Defendants filed a reply brief in further support of their motion to dismiss on July 1, 2013. (Doc. 13.)  Therefore, the motion to dismiss has been fully briefed and is ripe for disposition.

4

**II. Discussion**

## A.      Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  As such, "[t]he touchstone of the pleading standard is plausability."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1)

identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.     The Motion to Dismiss**

Defendants seek dismissal of the First Amendment retaliation claim (Count I) and the Pennsylvania Sunshine Act claim (Count II).  For the reasons that follow, the motion to dismiss will be denied.

**1.     Count I- First Amendment Retaliation**

Defendants argue that Count I of the Amended Complaint, First Amendment retaliation, fails to state a claim upon which relief can be granted.[1]  Additionally, Defendants Hess and Bengel assert that they are entitled to legislative and/or qualified immunity.

**a.     Failure to State a Claim**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, . . ." U.S. Const. amend. I.  A First Amendment retaliation claim requires "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)); *cf. Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) ("To state a First

---

[1]     Werkheiser's First Amendment retaliation claim is asserted against Defendants pursuant to 42 U.S.C. § 1983.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983.  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action.").

Defendants maintain that Werkheiser fails to state a retaliation claim because he did not engage in constitutionally protected conduct. Specifically, they contend that Werkheiser's speech concerning waste of Township resources and overpayment for administrative duties was made in his official capacity as a representative of the Township. Defendants thus reason that Werkheiser's First Amendment retaliation claim fails based on the Supreme Court's holding in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).

Werkheiser disputes the applicability of *Garcetti* to his speech. He argues that "speech as a duly elected supervisor is treated differently from speech as a public employee," and, accordingly, the standards governing public employee speech do not apply here. (Doc. 11, 6-8.)

*Garcetti* addressed the free speech rights afforded to public employees, not elected officials. At issue there was "whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties." *Garcetti*, 547 U.S. at 413, 126 S. Ct. 1951. In *Garcetti*, the respondent, a deputy district attorney, relayed concerns to his supervisors about what he perceived to be misrepresentations in an affidavit used to obtain a search warrant. *See Garcetti*, 547 U.S. at 414, 126 S. Ct. 1951. He followed up by preparing a disposition memorandum reiterating his concerns and recommending dismissal of the case. *See id*. The respondent claimed that he was subsequently subjected to retaliation based on his criticisms of the warrant. *See id.* at 415, 126 S. Ct. 1951.

The Court held "when public employees make statements pursuant to their official

8

duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 421, 126 S. Ct. 1951. In reaching this conclusion, the Court reiterated that "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* 547 U.S. at 417, 126 S. Ct. 1951 (citing, *inter alia, Pickering v. Board of Education of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) and *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987)). The relationship between the speaker's expressions and employment is significant as "[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Id*. at 418, 126 S. Ct. 1951. This is because of the government employer's need to have a significant degree of control over the words and actions of their employees. *See id*. The Court explained:

> Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission.

*Id*. at 422-23, 126 S. Ct. 1951. Thus, "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Id*. at 424, 126 S. Ct. 1951.

Defendants argue that *Garcetti*'s holding applies not only to public employees but also elected officials. (Doc. 13, 2-3.) As support, Defendants cite *Hogan v. Twp. of Haddon*, No. 04-2036, 2006 WL 3490353 (D.N.J. Dec. 1, 2006), *aff'd*, 278 F. App'x 98 (3d

Cir. 2008), *Hartman v. Register*, No. 06-CV-33, 2007 WL 915193 (S.D. Ohio Mar. 26, 2007), and *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606 (W.D. Mich. 2009). In *Hogan*, the plaintiff was one of three elected township commissioners. *See Hogan*, 2006 WL 3490353, at *1. The plaintiff alleged that she spoke out repeatedly on issues associated with the governance of the township and that she was subsequently retaliated against by one of the other commissioners. *See id*. at *2, *5. Following the holding in *Garcetti*, the United States District Court for the District of New Jersey found that the plaintiff's First Amendment claim failed because the plaintiff's speech was "made in her capacity as a Township commissioner (and not a private citizen)." *Id*. at *6.[2]

Defendants also rely on the United States District Court for the Southern District of Ohio's decision in *Hartman v. Register*, 2007 WL 915913. In *Hartman*, the plaintiff was the chairman of the township board of trustees. *See id*. at *1. The plaintiff claimed that the township clerk retaliated against him in violation of the First Amendment after he contested the accuracy of the official township meeting minutes prepared by the clerk. *See id*. at *1-3. According to the court, the plaintiff's complaint made clear that his opposition to the minutes of the township meetings occurred in the context of his official duties as a trustee of the township. *See id*. at *6. Citing *Garcetti*, the court noted "that to the extent Plaintiff alleges [the clerk] retaliated against him for contesting the accuracy of the meetings of the Board of Trustees, he was not engaged in activity protected by the First Amendment." *Id*. Although recognizing that the case before it differed from *Garcetti* insofar as the plaintiff and the clerk were not in an employer-employee relationship, the court found this difference immaterial since *Garcetti* "makes clear that speech made pursuant to an individual's official

---

[2]     On appeal, the plaintiff argued that the district court improperly applied *Garcetti*. *See Hogan*, 278 F. App'x at 102 n.1. The *Garcetti* arguments were not addressed because the Third Circuit concluded that the plaintiff's First Amendment rights were not violated. *See id*.

duties is not protected by the First Amendment." *Id*. The court then stated that "[t]he distinction between the public employee in *Garcetti* and an elected official in this case, Plaintiff, is inconsequential." *Id*. Accordingly, the plaintiff failed to state a claim for relief under the First Amendment to the extent that the claim was based on his opposition to approving minutes of the township board meetings. *See id*.

The final case relied on by Defendants is *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606 (W.D. Mich. 2009). In *Shields*, the plaintiff, a former member of the township board of trustees, claimed that the defendants violated his First Amendment rights by preventing him, as a member of the board, from speaking during the time reserved for citizen comment and by voting to adjourn the April 2, 2007 board meeting before he finished his comments. *See id*. at 609. The court concluded that the plaintiff could not prevail on his First Amendment claim and granted the defendants' motion for summary judgment. *See id*. at 613-16. Relying on *Hogan* and *Hartman*, the court reasoned that "[a]s a board member, Plaintiff Shields may not technically have been an employee of the Township, but he surely was a representative of the Township, and the concerns underlying *Garcetti* apply with equal force to his situation." *Id*. at 615. As an elected board member, the plaintiff submitted to the board's power to discipline its members for legislative speech, which included the power to force board members to acquiesce in the board's collective decisions regarding the process of ongoing meetings. *See id*. "Unlike an ordinary citizen, Plaintiff represents the Township when he speaks at a public board meeting. Thus, his constitutional rights are more analogous to the employee in *Garcetti* than to a private citizen sitting in the audience." *Id*. at 615-16 (citing *Hogan*, 2006 WL 3490353, at *5-6; *Hartman*, 2007 WL 915193, at *7). Accordingly:

> [t]he Board must be able to take into account the content of Plaintiff's speech when deciding whether to discipline him, or more routinely, whether to move onto another agenda item or adjourn the meeting entirely. To rule otherwise would allow one elected official to hold captive a legislative body and force his

> or her political adversaries to remain silent while the official denounces them or simply turns the conversation to irrelevant matters. The First Amendment allows Plaintiff to pursue aggressively this approach on the campaign trail, but it does not require that he be afforded free reign to do so in every public meeting.

*Id.* at 616. As such, the defendants were granted summary judgment on the plaintiff's First Amendment claim. *See id.*

Werkheiser, however, relying on then-Magistrate Judge Cathy Bissoon's[3] Report and Recommendation in *Zimmerlink v. Zapotosky*, No. 10-237, 2011 U.S. Dist. LEXIS 53186 (W.D. Pa. Apr. 11, 2011), *adopted as augmented by*, 2011 U.S. Dist. LEXIS 53189 (May 18, 2011) (Cercone, J.), argues that speech by an elected official is treated differently than public employee speech. In *Zimmerlink*, the plaintiff, an elected member of a county board of commissioners, commenced an action under § 1983 against the other two members of the board and the county for violations of the First and Fourteenth Amendments. *See Zimmerlink*, 2011 U.S. Dist. LEXIS 53186, at *1. The plaintiff, the minority commissioner, alleged that she was an outspoken critic of the other commissioners' policies and practices. *See id.* at *2. The commissioner defendants allegedly retaliated against the plaintiff by hindering her ability to participate in official county business and vote at county board meetings. *See id.* The plaintiff claimed that the defendants retaliated against her for exercising her free speech rights and violated her equal protection rights under the Fourteenth Amendment. *See id.* at *2-3. The defendants filed a motion to dismiss arguing that the amended complaint failed to state First or Fourteenth Amendment claims, and, alternatively, that the commissioner defendants were entitled to qualified immunity. *See id.* at *3.

With respect to the First Amendment claim, the threshold issue addressed by Judge

---

[3] She has since become a United States District Judge for the Western District of Pennsylvania.

Bissoon was whether *Garcetti* applies to elected representatives. *See id*. at *5. First, Judge

Bissoon reviewed Supreme Court precedent on elected officials' speech. *See id*. at *5-6.

Judge Bissoon found significant *Bond v. Floyd*, 385 U.S. 116, 87 S. Ct. 339, 17 L. Ed. 2d

235 (1966), a case involving the exclusion of an elected Representative from membership

in the Georgia House of Representatives because of his statements criticizing federal policy

in Vietnam and Selective Service Laws. In *Bond*, the Court explained that "'[t]he manifest

function of the First Amendment in a representative government requires that legislators

must be given the widest latitude to express views on issues of policy.'" *Bond*, 385 U.S. at

135-36, 87 S. Ct. 339. In rejecting a proposed distinction between legislators and "citizen-

critics," the *Bond* Court emphasized:

> The interest of the public in hearing all sides of a public issue is hardly
> advanced by extending more protection to citizen-critics than to legislators.
> Legislators have an obligation to take positions on controversial political
> questions so that their constituents can be fully informed by them, and be
> better able to assess their qualifications for office; also so they may be
> represented in governmental debates by the person they have elected to
> represent them.

*Id*. at 136-37. Judge Bissoon then noted that the Supreme Court, since *Bond*, has

reiterated the significance of elected officials' free speech rights. *See Zimmerlink*, 2011 U.S.

Dist. LEXIS 53186, at *6-7 (citing *Wood v. Georgia*, 370 U.S. 375, 395, 82 S. Ct. 1364, 8

L. Ed. 2d 569 (1962) ("The role that elected officials play in our society makes it all the more

imperative that they be allowed freely to express themselves on matters of current public

importance."); *Republican Party of Minnesota v. White*, 536 U.S. 765, 781-82, 122 S. Ct.

2528, 153 L. Ed. 2d 694 (2002) (same)).

    After discussing *Garcetti*, Judge Bissoon rejected the defendants' suggestion that

*Garcetti* affected the viability of *Bond*. *See id*. at *8 ("But *Garcetti*, and the public employees

speech cases that preceded it, did not affect *Bond*."). This, Judge Bissoon explained, is

because "[w]hile the government has interests as an employer justifying some regulation

of employees' speech, the government has no interest justifying regulation of elected

13

legislators' speech. *Id*. at *8-9 (comparing *Garcetti*, 547 U.S. at 417, 126 S. Ct. 1951, and *Pickering*, 391 U.S. at 568, 88 S. Ct. 1731, with *Bond*, 385 U.S. at 135-36, 87 S. Ct. 339). Thus, since "'the manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy,' the governmental interest in regulating speech of public employees to promote efficient operations does not apply to speech of an elected official." *Id*. at *9-10 (quoting *Waters v. Churchill*, 511 U.S. 661, 675, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994)). Lastly, Judge Bissoon explained why *Garcetti* cannot be applied to elected officials' speech:

> Under *Garcetti*, speech pursuant to a public employee's "official duties" is afforded no protection under the First Amendment. *Garcetti*, 547 U.S. at 421. *Bond* recognized that elected legislators have an "obligation" to speak on political issues. *Bond*, 385 U.S. at 136. Thus, if *Garcetti* applied to elected officials, speaking on political issues would appear to be part of an elected official's "official duties." *See Garcetti*, 547 U.S. at 424-25 (noting that determining "official duties" is a practical inquiry into whether a "task is within the scope of the employee's professional duties"). But protection of such speech is the "manifest function" of the First Amendment. *Bond*, 385 U.S. at 135. *Garcetti*, thus, cannot be applied to political speech of elected officials consistently with *Bond*.

*Id*. at *10-11. Accordingly, the plaintiff's political speech regarding budgetary and fiscal matters, zoning practices, human resource issues, and contract awards was protected by the First Amendment, and as the plaintiff adequately alleged all other elements for a First Amendment retaliation cause of action, she was permitted to proceed with the claim.[4] *See id*. at *11.

While limited, other courts besides those cited by the parties have commented on

---

[4]     Following the close of discovery, the defendants filed a motion for summary judgment. The motion was granted and judgment was entered in favor of the defendants because the conduct by the commissioner defendants was insufficient to deter the plaintiff from exercising her First Amendment rights. *See Zimmerlink v. Fayette Cnty.*, No. 10-237, 2012 WL 598198 (W.D. Pa. Nov. 29, 2012). The plaintiff appealed the order granting summary judgment to the defendants, and the appeal is currently pending before the Third Circuit. *See Zimmerlink v. Zapotsky, et al.*, No. 12-4426 (3d Cir.).

the applicability of *Garcetti* to speech by elected officials. *See, e.g., Siefert v. Alexander*, 608 F.3d 974, 991 (7th Cir. 2010) (Rovner, J., dissenting in part) (dissenting from the majority's reliance on the balancing test from *Pickering* and *Connick* to evaluate elected judge's challenge to the Wisconsin Code of Judicial Conduct rule prohibiting judges and judicial candidates from publically endorsing or speaking on behalf of a partisan candidate or platform because "[n]either this court nor the Supreme Court, however, has ever held that these decisions [*Garcetti*, *Connick*, or *Pickering*] limiting the speech of public employees can be applied to elected officials' speech, including the speech of elected judges."); *Rangra v. Brown*, 556 F.3d 515 (5th Cir. 2009); *Jenevin v. Willing*, 493 F.3d 551, 558 (5th Cir. 2007) ("We are persuaded that the preferable course ought not draw directly upon the *Pickering-Garcetti* line of cases for sorting the free speech rights of employees elected to state office."); *Tarzia v. City of Stamford*, No. 10cv1583, 2010 WL 4683929, at *9 (D. Conn. Nov. 9, 2010) (noting that the Second Circuit has not explicated whether elected official speech should be subjected to the *Garcetti* analysis but finding that under either analysis the plaintiff failed to establish that he was likely to succeed on the merits of his claim); *Conservation Comm'n of the Town of Westport v. Beaulieu*, No. 07-11087, 2008 WL 4372761, at *4 (D. Mass. Sept. 18, 2008) (*Garcetti* does not apply to appointed public officials).

For example, the United States Court of Appeals for the Fifth Circuit's panel decision in *Rangra* addressed the question of "whether speech of elected state and local government officials made pursuant to their official duties, like speech of non-elected public employees, is less protected by the First Amendment than other speech." *Rangra v. Brown*, 566 F.3d 515, 517 (5th Cir. 2009), *vacated by* 576 F.3d 531 (5th Cir. 2009) (granting rehearing en

banc),[5] *appeal dismissed as moot*, 584 F.3d 206 (5th Cir. 2009).[6]  According to the Fifth

Circuit:

> Job-related speech by public employees is clearly less protected than other speech because the Court has held that government employees' speech rights must be balanced with the government's need to supervise and discipline subordinates for efficient operations.   The First Amendment does not protect government employees' job-related speech unless the speech is about a matter of public concern, "and even then, a government employee may be fired or disciplined for her speech if the government employer can show, on balance, that the efficient operation of the office justified the action."  But when the state acts as a sovereign, rather than as an employer, its power to limit First Amendment freedoms is much more attenuated.   That is because a state's interest in regulating speech as sovereign is "relatively subordinate . . . [as] [t]he government cannot restrict the speech of the public at large just in the name of efficiency."  *Garcetti* itself, like the Court's other public employee speech cases, recognizes the state's very limited power as sovereign to infringe on First Amendment freedoms.  None of the Supreme Court's public employee speech decisions qualifies or limits the First Amendment's protection of elected government officials' speech.   Contrary to the district court's reasoning, there is a meaningful distinction between the First Amendment's protection of public employees' speech and other speech, including that of elected government officials.

*Rangra*, 566 F.3d at 522-24 (internal footnotes and citations omitted).

Relying on Supreme Court precedent, the Fifth Circuit concluded that the First

---

[5]    According to Rule 41.3 of the Fifth Circuit's Internal Operating Procedures, "[u]nless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate." 5th Cir. R. 41.3.

[6]    In *Rangra*, the plaintiffs were indicted in state court for violations of the criminal provisions of the Texas Open Meetings Act by acting as a quorum in exchanging emails discussing whether to call a council meeting to consider a public contract matter. *See id*. at 518.  The charges were ultimately dismissed. *See id*.  Fearing future prosecution and undue restriction of their First Amendment speech rights, the plaintiffs commenced the action for declaratory and injunctive relief in federal district court challenging as content-based speech regulations the criminal provisions of the Texas Open Meetings Act. *See id*.  Applying *Garcetti*, the district court denied the plaintiffs' requests for declaratory and injunctive relief and reasoned that "[f]or purposes of determining what constitutes protected speech under the First Amendment, there is no meaningful distinction among public employees, appointed public officials, and elected public officials." *Rangra v. Brown*, No. P-05-CV-075, 2006 WL 3327634, at *5 (W.D. Tex. Nov. 7, 2006).

16

Amendment's protection of elected officials' speech is "robust and no less strenuous than that afforded to the speech of citizens in general." *Id*. at 524-25 (citations omitted). Accordingly, the Fifth Circuit held that the district court incorrectly assumed that the *Pickering-Garcetti* line of cases governed the dispute at issue. *See id*. at 526,

Following the panel's determination in *Rangra*, 566 F.3d at 515, however, the Fifth Circuit voted to rehear the case en banc. *See Rangra v. Brown*, 576 F.3d 531, 532 (5th Cir. 2009). Thus, the panel's opinion was vacated. But, prior to addressing the merits of the action, the Fifth Circuit, sitting en banc, dismissed the case as moot. *See Rangra v. Brown*, 584 F.3d 206, 207 (5th Cir. 2009) (en banc).

Considering the arguments of the parties, I will not apply *Garcetti* in this case. *Garcetti* did not address the speech rights of elected officials, nor did it expand the speech limitations on public employees to include elected officials. Thus, *Garcetti*'s holding and reasoning did not alter the speech rights of elected public officials.

Moreover, there is a meaningful distinction between the speech of an elected official and that of a public employee. As the Supreme Court emphasized in *Bond*, "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Bond*, 385 U.S. at 135-36, 87 S. Ct. 339. The obligation on elected officials to take positions on controversial political question ensures that their constituents are fully and adequately represented in governmental debates. *See id*. at 136-37, 87 S. Ct. 339. Thus, while the government has an interest as an employer in some regulation of its employees' speech, the same concerns do not arise in connection with speech of elected legislators because "the governmental interest in regulating speech of public employees to promote efficient operations does not apply to speech of an elected official." *Zimmerlink*, 2011 U.S. Dist. LEXIS at *8-11. Although this case differs from *Zimmerlink* insofar as it involves a dual-capacity Plaintiff-

Werkheiser was both a public employee (Roadmaster) and an elected official (Supervisor)-the Amended Complaint alleges, and the parties' submissions suggest, that Werkheiser's speech occurred in his capacity as an elected Township Supervisor. Therefore, *Garcetti* is inapplicable to his speech as an elected official.[7]

Based on the facts as set forth in the Amended Complaint, Werkheiser adequately alleges a First Amendment retaliation claim. The motion to dismiss the First Amendment retaliation claim will be denied.

### b.   Immunity

Defendants Hess and Bengel also argue that even if Werkheiser adequately alleges a First Amendment retaliation claim, they are nonetheless entitled to legislative and/or qualified immunity.

### i.    Legislative Immunity

"Local legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities." *In re Montgomery Cnty.*, 215 F.3d 367, 376 (3d Cir.

---

[7]    Defendants further opine that the First Amendment claim against the Township fails because "it is clear that Plaintiff is contending solely that Pocono is vicariously liable for the conduct of Hess and Bengel." (Doc. 10, 13.) "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Social Servs. New York City*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed .2d 611 (1978)). Because Werkheiser's First Amendment claim against the Township is based on a decision by the governing body and not on a *respondeat superior* theory, the Township's motion to dismiss the First Amendment claim will be denied. *See, e.g., Rinehart v. Mt. Penn Borough Mun. Auth.*, No. 01-5628, 2002 WL 32341795, at*9 (E.D. Pa. Dec. 19, 2002) ("the binding vote of the Authority's governing Board of Directors was a decision or policy of the Authority itself, and if it violated the plaintiff's constitutional rights, then the Authority itself can be held liable along with the individual members of the Board.").

2000) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54, 118 S. Ct. 966. An act is legislative, and thus covered by absolute immunity, if it is "both substantively and procedurally legislative in nature." *In re Montgomery Cnty.*, 215 F.3d at 376 (citing *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1996)).

The Third Circuit has explained:

> First, the act must be 'substantively' legislative, *i.e.*, legislative in character. Legislative acts are those which involve policy-making decision [sic] of a general scope or, to put it another way, legislation involves linedrawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration.[8] In addition, the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.

*Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 774 (3d Cir. 2000) (quoting *Ryan v. Burlington Cnty.*, 889 F.2d 1286, 1290-91 (3d Cir. 1989)).

Although "firing a particular employee is a personnel decision that does not involve general policymaking," *In re Montgomery Cnty.*, 215 F.3d at 377, the termination of an employee resulting from a change in policy regarding a department may be legislative. In *In re Montgomery County*, the Third Circuit held that a Salary Board taking a vote to fire a particular employee was not substantively legislative. *See id*. In *Bogan v. Scott-Harris*, however, the termination of one employee was both procedurally and substantively legislative where the mayor introduced a budget, took a vote, and signed into a law an

---

[8]     "This distinction has led [the Third Circuit] to distinguish between eliminating a position and terminating an individual employee, characterizing the former as legislative and the latter as administrative." *Kalinoski v. Lackawanna Cnty.*, 511 F. App'x 208, 212 (3d Cir. 2013) (citing *Baraka v. McGreevey*, 481 F.3d 187, 199-200 (3d Cir. 2007) (collecting cases)).

ordinance eliminating the employee's department. 523 U.S. at 47, 118 S. Ct. 966. The Supreme Court reasoned that the act "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id* . at 55-56, 118 S. Ct. 966.

Defendants Hess and Bengel argue that their acts were both substantively and procedurally legislative and that case law relating to employee termination is inapplicable here because "[a]s plaintiff fully acknowledges, the decision to appoint another individual as Roadmaster came at a reorganization meeting." (Doc. 10, 17 n.2.)

Individual Defendants rely on *Snyder v. Kraus*, No. 08-5217, 2010 WL 742621 (E.D. Pa. Mar. 2, 2010) in moving to dismiss the Amended Complaint based on legislative immunity. In *Snyder*, the plaintiff, a township supervisor and former candidate for reelection to the township's board of supervisors, commenced a lawsuit alleging constitutional claims related to his campaign for reelection. *See id*. at *1. Thereafter, the plaintiff was removed from various boards, which he claimed was based on his decision to commence litigation. *See id*. at *1-2. The supervisor defendants moved to dismiss the First Amendment claim and argued that the decision to replace the plaintiff was effectuated "by a vote at the . . . annual reorganization meeting." Therefore, they claimed they were entitled to absolute legislative immunity. *Id*. at *2.

In concluding that the supervisor defendants were entitled to legislative immunity, the court cited 53 Pa. Stat. Ann. § 65602(c), which provides that a "board of supervisors may appoint a supervisor to be employed as roadmaster, . . . or in any employe[e] capacity not otherwise prohibited by this or any other act." *Id*. The court emphasized the statute's use of the language "may appoint" made "clear boards of supervisors have discretionary authority in this capacity." *Id*. Because the board voted to appoint a different supervisor to replace the plaintiff on various boards and authorities, the court found that "such a vote is

within the Board's discretionary power and is thus a legislative activity entitled to absolute immunity." *Id*.

Applying *Snyder*, Defendants Hess and Bengel argue that because they voted to appoint another individual as Roadmaster, the act of conducting such a vote falls within the discretionary powers of the board. (Doc. 10, 16.) Thus, they conclude that they acted in a substantively legislative capacity. Werkheiser disputes that Supervisors Hess and Bengel were engaged in substantively legislative activity. Rather, he suggests that the refusal to reappoint him as Roadmaster was an executive or administrative act.

The First Amendment claim against Defendants Hess and Bengel will not be dismissed on grounds of legislative immunity. The decision not to reappoint Werkheiser and instead appoint Bengel as Roadmaster was an administrative personnel decision. This decision did not involve policy-making or linedrawing, such as office restructuring or position elimination; it is instead more akin to the termination of a single employee, which the Third Circuit has found to be administrative or executive in nature. *See, e.g., In re Montgomery Cnty.*, 215 F.3d at 377. Other courts have similarly concluded that decisions not to hire, rehire, or reappoint an individual applicant to a particular position are administrative in nature. *See, e.g., Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003) (noting that the board members' actions with respect to the plaintiff's employment were administrative, not legislative, in nature because the acts were part of a process by which an employment situation regarding a single individual was resolved); *Alexander v. Holden*, 66 F.3d 62, 67 (4th Cir. 1995) (finding "the elimination of a particular position's salary, the consolidation of that position with another, and a refusal to hire or reappoint [the plaintiff] to the newly created position" to be an administrative personnel decision and "refusing to reappoint or hire [the plaintiff] constituted administrative actions" not entitled to legislative immunity protection); *Smith v. Lomax*, 45 F.3d 402 (11th Cir. 1995) (denying the

defendants' request for legislative immunity after the board failed to reappoint the plaintiff as county clerk); *Schlarp v. Dern*, 610 F. Supp. 2d 450, 458 (W.D. Pa. 2009) (finding absolute immunity inapplicable to the defendants' decision not to promote the plaintiff); *Dunleavy v. Wayne Cnty. Comm'n*, No. 04-CV-74670, 2006 WL 1134417, at *4 (E.D. Mich. Apr. 25, 2006) ("Legislative immunity simply does not apply when, as here, the action in question involves no deliberative, policymaking or budgetary decision-making (*i.e.*, a legislative action), but is rather a decision, whether or not in the form of a vote on a resolution, not to appoint or reappoint an individual applicant for a particular position (*i.e.*, administrative action)."); *Zdziebloski v. Town of E. Greenbush*, 336 F. Supp. 2d 203-04 (N.D.N.Y. 2004) ("Not rehiring  particular employee is an administrative personnel matter that involves no policy formulation.").

Additionally, Defendants Hess and Bengel's argument that they are entitled to legislative immunity because the decision to appoint Bengel as Roadmaster occurred by vote of the Board of Supervisors is not persuasive.  "A member of a local governmental body does not necessarily act in a legislative capacity when his participation in the action of the body takes the form of a vote; the action of the body must itself be legislative to make the member's act of voting legislative." *Roberson v. Mullins*, 29 F.3d 132, 134 n.3 (4th Cir. 1994); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 579 (9th Cir. 1984) ("Although a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity."); *see, e.g., In re Montgomery Cnty.*, 215 F.3d at 377 ("we need not consider whether the act of firing Wright by vote of the Salary Board was procedurally legislative.  Regardless of the procedure, the act was not legislative in substance."); *Abraham v. Pekarski*, 728 F.2d 167, 174 (3d Cir. 1984) (noting in *dicta* that "[t]he fact that the action complained of resulted from a vote of the members of the governing body is not dispositive, for in the exercise of non-legislative powers all corporate

bodies require a vote of their governing bodies."); *see also Canary v. Osborn*, 211 F.3d 324, 330-31 (6th Cir. 2000) (board members were not entitled to immunity because their vote against the renewal of plaintiff's contract was not legislative in nature where their vote (1) constituted a personnel action involving a personalized assessment of an individual employee rather than mere budgetary considerations, (2) did not involve a true termination of plaintiff's position, and (3) did not have prospective budgetary implications beyond the current jobholder); *Smith*, 45 F.3d at 405 ("[the defendants] would have us determine that the single act of voting for the person to be anointed clerk rendered their conduct immune from suit. We decline to adopt such a sweeping definition of legislative immunity.").

Lastly, 53 Pa. Stat. Ann. § 65602(c) does not by itself establish that Hess and Bengel are entitled to legislative immunity. *See* 53 Pa. Stat. Ann. § 65602(c) ("The board of supervisors may appoint a supervisor to be employed as roadmaster, laborer, secretary, treasurer, assistant secretary, assistant treasurer or in any employe capacity not otherwise prohibited by this or any other act."). Subsection (c) simply permits a township to appoint a supervisor to other employment positions, such as roadmaster or laborer. Or, stated differently, subsection (c) allows a supervisor to hold other public employment with the township in addition to his or her position as supervisor. Alone, section 65602(c) does not render decisions to appoint or reappoint a supervisor as roadmaster legislative. Instead, determining whether Defendants' acts were legislative or administrative/executive requires consideration of the nature and substance of the act. And, in light of the facts alleged here, Defendants Hess and Bengel engaged in an administrative personnel decision impacting a single employee. Absolute legislative immunity is not warranted based on the facts set forth in the Amended Complaint.

### ii. Qualified Immunity

Individual Defendants also contend that even if Werkheiser states a First Amendment claim and they are not entitled to absolute legislative immunity, they are nevertheless entitled to qualified immunity. Individual Defendants argue that they did not act in knowing violation of Werkheiser's rights when they failed to reappoint him as Roadmaster. They also advance the argument that "multiple courts have held that Defendants' actions were not unlawful as Plaintiff's speech is not protected by the First Amendment." (Doc. 13, 3-4.) And, even if the "Court [ ] disagree[s] with the decisions of those Courts that have found *Garcetti* to be applicable to legislative speech, it cannot be said that Defendants' alleged violation was clearly established." (*Id*. at 4.)

The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). "Thus, we ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Courts may address the two *Saucier* prongs in any order, at their discretion. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "A defendant has the burden to establish that he is entitled to qualified immunity." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

A legal right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id*. (citations omitted). This prong "of the qualified

24

immunity analysis therefore 'turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Montanez v. Thompson*, 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Pearson*, 555 U.S. at 243, 129 S. Ct. 808).

Dismissal of the First Amendment claim on qualified immunity grounds is inappropriate. First, Werkheiser sufficiently alleges that Defendants Hess and Bengel retaliated against him in violation of his constitutional rights. Second, Werkheiser's First Amendment rights were clearly established at the time of the alleged constitutional violation. *Bond*, as discussed above, clearly established that elected officials' speech rights were no different than the First Amendment rights of "citizen critics." *Bond*, 385 U.S. at 135-37, 87 S. Ct. 339. *Garcetti* did not change this clearly established law, nothing in *Garcetti* indicates that its holding is applicable to elected officials, and *Garcetti* did not affect *Bond*. Furthermore, "the government interests justifying restrictions on public employee speech do not exist in the context of political speech by elected officials, and *Garcetti* cannot be applied to such speech consistently with *Bond*." *Zimmerlink*, 2011 U.S. Dist. LEXIS 53186, at *17 (finding the defendants were not entitled to qualified immunity on the plaintiff's First Amendment claim). Since the law regarding an elected official's First Amendment speech rights was clearly established at the time of the complained of action in this case, a reasonable official would have understood that retaliating against Werkheiser because he spoke as an elected official on issues concerning the Township would violate his constitutional rights. Based on the facts as alleged in the Amended Complaint, Defendants Hess and Bengel are not entitled to qualified immunity.

Lastly, Defendants Hess and Bengel's suggestion that because other district courts have found *Garcetti* applicable to speech by elected officials, Werkheiser's rights were not clearly established is unconvincing. The fact that "three district court opinions . . . applied

*Garcetti* to elected officials do[es] not alter controlling law that was clearly established by *Bond . . . .*" *Id*. at *18-19 (citing *Safford Unified Sch. Dist. v. Redding*, 557 U.S. 364, 378, 129 S. Ct. 2633, 174 L. Ed. 2d 354 (2009) ("We would not suggest that entitlement to qualified immunity is the guaranteed product of disuniform views of the law in other federal, or state, courts, and the fact that a single judge, or even a group of judges, disagree about the contours of a right does not automatically render the law unclear if we have been clear.")).

In light of the foregoing, Werkheiser will be permitted to proceed with his First Amendment claim against all Defendants. Werkheiser adequately states a retaliation claim against the Township, Hess, and Bengel. Furthermore, Defendants Hess and Bengel are not entitled to absolute legislative or qualified immunity under the facts as alleged in the Amended Complaint.

**2. Count II- Second Class Township Code and Pennsylvania Sunshine Act**

Count II of the Amended Complaint asserts claims for violations of the Second Class Township Code and the Pennsylvania Sunshine Act. Defendants argue that the Sunshine Act claim fails as a matter of law because Pennsylvania courts have held that subsequent public action can cure the effect of prior formal action taken unlawfully in private. However, Werkheiser asserts that public meetings cannot cure violations of the Sunshine Act where decisions are pre-planned, or all meaning deliberation is held in secret before the public meeting.

The Pennsylvania General Assembly enacted the Sunshine Act, 65 Pa. Cons. Stat. Ann. §§ 701-714, in order to "provide citizens with an opportunity to observe the deliberation, policy formulation and decision-making processes of public agencies." *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011) (quoting *Lee Publ'ns, Inc., v. Dickinson Sch. of Law*, 848 A.2d 178, 180 n.2 (Pa. Commw. Ct. 2004) (citing 65 Pa. Cons. Stat. Ann. § 702

(West 2000))). The Sunshine Act requires that: (1) "[o]fficial action and deliberations by a quorum of the members of an agency . . . take place at a meeting open to the public;" (2) "the vote of each member who actually votes on any . . . ordinance . . . must be publicly cast . . . ;" (3) minutes must be kept of agency meetings; and (4) public notice be given in advance of the meeting in a manner directed by the Act. *Id.* (citing 65 Pa. Cons. Stat. Ann. §§ 704, 705, 706, 709 (West 2000))). "Deliberation" is defined as "the discussion of agency business held for the purpose of making a decision," while "official action" includes:

> (1) Recommendations made by an agency pursuant to statute, ordinance or executive order.
>
> (2) The establishment of policy by an agency.
>
> (3) The decisions on agency business made by an agency.
>
> (4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa. Cons. Stat. Ann. § 703 (West 2000).

Werkheiser will be permitted to proceed with his Sunshine Act claim. Here, he sufficiently alleges that Defendants Hess and Bengel constituted a quorum of the Township's Board of Supervisors and that they met in private with other Township officials for the purpose of making decisions regarding the appointment of a Roadmaster. While Defendants argue that the subsequent reorganization meeting cured any violations of the Sunshine Act, *see, e.g., Picone v. Bangor Area Sch. Dist.*, 936 A.2d 556, 563 (Pa. Commw. Ct. 2007) (citing *Association of Community Organizations for Reform Now (ACORN) v. Southeastern Pennsylvania Transportation Authority (SEPTA)*, 789 A.2d 811 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 569 Pa. 695, 803 A.2d 736 (2002)), "Sunshine Act cases are fact intensive." *Kaleta v. Clausi*, No. 12-cv-1987, 2013 WL 2300478, at *6 (M.D. Pa. May 24, 2013) (citing *Smith v. Twp. of Richmond*, 54 A.3d 404, 411 (Pa. Commw. Ct. 2012)). Because Werkheiser adequately pleads facts that the January 7, 2013 reorganization meeting did not cure the alleged violations of the Sunshine Act, Count II of

27

the Amended Complaint will not be dismissed.

### III. Conclusion

For the above stated reasons, the motion to dismiss will be denied.

An appropriate order follows.


August 8, 2013                                    /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                        United States District Judge