**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HAROLD WERKHEISER, Individually and in his Official Capacity as a Supervisor of Pocono Township,<br><br>    Plaintiff,<br><br>        v.<br><br>POCONO TOWNSHIP, FRANK HESS, Supervisor, and HENRY BENGEL, Supervisor,<br><br>    Defendants. | CIVIL ACTION NO. 3:13-cv-1001<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before me is a Motion for Summary Judgment (Doc. 41) filed by Defendants Pocono Township, Frank Hess, and Henry Bengel (collectively "Defendants"). Plaintiff Harold Werkheiser was an elected Supervisor and also the appointed Roadmaster of Pocono Township. He contends that he was not reappointed as Roadmaster because he engaged in protected First Amendment conduct, and that his replacement was appointed in violation of Pennsylvania's Second Class Township Code, 53 P.S. 65 § 601, and the Sunshine Act, 65 Pa. § 701 *et seq*. (*See* Doc. 7, Amended Complaint ("Am. Compl."), ¶¶ 8-34). Because Plaintiff's speech was not constitutionally protected, Defendants' motion for summary judgment will be granted as to Plaintiff's First Amendment claim, which will be dismissed with prejudice. Because the First Amendment claim set the basis for this Court's jurisdiction, I will decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims and will dismiss them without prejudice.

**I. Factual Background**

Plaintiff was an elected official serving on the Board of Supervisors of Pocono Township in Monroe County, Pennsylvania. (Doc. 7, Amended Complaint ("Am. Compl."), ¶¶ 2-3.) He was elected to a six-year term commencing in 2007 and expiring at the end of 2013. (Id. at ¶ 2.) During part of Plaintiff's tenure as Supervisor, Defendants Frank Hess and

Henry Bengel also served on the three-member Board of Supervisors. (*Id.* at ¶ 4.)

Township Supervisors are permitted to hold separate positions of employment with the Township. (*Id.* at ¶ 6.) In 2008, Plaintiff was appointed Township Roadmaster and was reappointed to this position every year thereafter until 2013. (*Id.* at ¶ 7.)

In January 2012, Defendant Hess, who was Supervisor at the time, became temporarily disabled and took leave from the Township for ten days during which Mr. Frank Froio ("Froio") took over his duties. (*Id.* at ¶ 12.) Despite opposition by Plaintiff, Froio was subsequently hired by the Township upon motion by Defendant Bengel and second by Defendant Hess. (*Id.* at ¶ 13.) As Froio's position developed, Hess's responsibilities and workload decreased. (Id. at ¶ 14.) Hess, however, continued to collect approximately the same compensation. (Id. at ¶ 15.) Plaintiff voiced his objection to the cost of Froio's position to the Township and to the creation of a new position, which increased the Township's expenses. He also objected to paying Hess, whose duties were being performed by Froio, as well as to the appointment of an outside grant-writer, who would be performing work that Plaintiff believed should be performed by Froio and Hess. (Id. at ¶ 16.)

According to the Complaint, because Plaintiff continued to voice his objections regarding Froio and other related Township matters, in December 2012, Hess and Bengel decided not to reappoint Plaintiff as Roadmaster for the year 2013. (*Id.* at ¶¶ 14-16.) As a result of that decision, Plaintiff commenced an action in Pennsylvania state court. Defendants removed the action to federal court, and Plaintiff subsequently filed an amended complaint. In that complaint, Plaintiff asserted a claim for First Amendment retaliation and a state law claim under the Second Class Township Code and Pennsylvania Sunshine Law. (Am. Compl., at ¶¶ 8-34).

On May 31, 2013, Defendants filed a motion to dismiss both claims, asserting, among other things, that they were entitled to qualified immunity as to Plaintiff's First Amendment claim. (Doc. 9). Specifically, Hess and Bengel argued that they were entitled to qualified immunity because the law regarding Plaintiff's rights was not clearly established. I rejected this argument. *Werkheiser v. Pocono Twp.*, 2013 U.S. Dist. LEXIS 111759, 2013

2

WL 4041856 (M.D. Pa., Aug. 8, 2013).

On March 6, 2015, the U.S. Court of Appeals for the Third Circuit vacated this Court's decision and remanded the case, holding, among other things, that Plaintiff's First Amendment rights as an elected official were not sufficiently defined to warrant denying qualified immunity. *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 183 (3d Cir.), *cert. denied sub nom*. *Werkheiser v. Pocono Twp., Penn.*, 136 S. Ct. 404 (2015).

On April 15, 2016, Defendants filed the instant Motion for Summary Judgment (Doc. 41), which has been fully briefed and is now ripe for disposition.

## II. Legal Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Carrasca v. Pomeroy*, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although entitled to the benefit of all justifiable inferences from the evidence, *id*. at 255, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth "specific facts showing that there is a genuine issue for trial," else summary judgment, "if appropriate," will be entered. Fed. R. Civ. P. 56(e). This is so because, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

As such, a moving party is obligated to meet "the burden of supporting [its] motion[] 'with credible evidence . . . that would entitle [that party] to a directed verdict if not controverted at trial.'" *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex*,

3

477 U.S. at 331); *see also United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) ("[T]he moving party . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.") (emphasis removed, internal citations omitted). Once the moving party has satisfied its burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *See Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). Hence, the party opposing the motion for summary judgment cannot rest merely on its allegations and must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

### III. Analysis

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, . . ." U.S. Const. amend. I.

In some cases, the First Amendment protects public employees from retaliation by their employer. The Third Circuit has articulated a three-step test to evaluate whether public employees may sue to enforce their First Amendment rights under 42 U.S.C. § 1983.[1] *See*

---

[1] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399

*Baldassare v. State of New Jersey*, 250 F.3d 188, 195-96 (3d Cir.2001); *San Filippo v. Bongiovanni*, 30 F.3d 424, 430-31 (3d Cir.1994); *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993).

First, a plaintiff must show that his conduct was constitutionally protected. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (citing *Bd. of Cnty. Comm'rs. v. Umbehr*, 518 U.S. 668, 675 (1996)). Second, a plaintiff must show that the protected activity "was a substantial factor in the alleged retaliatory action." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568 (1977). Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct. *Ambrose*, 303 F.3d at 493; *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994). The first part of the test, whether the activity was protected by the First Amendment, is a question of law for the court, whereas the second and third parts are typically factual questions for the jury. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

A.   **Constitutional Protections for an Elected Official's Speech**

At the core of this litigation is whether the speech of an elected official is a constitutionally protected activity. Parties' briefings suggest an unsettled nature of the law as to this issue in this Circuit. Indeed, the Third Circuit has never directly decided this constitutional question and what retaliation against elected officials, if any, violates the First Amendment. *See Werkheiser*, 780 F.3d at 183.

It is well-established in First Amendment jurisprudence that a person does not forgo his or her right to freedom of speech simply by accepting public employment. *Beilan v. Board of Public Ed., School Dist. of Philadelphia*, 357 U.S. 399, 78 S. Ct. 1317 (1958). The state's interest in regulating the speech of its employees, however, differs significantly from its interest in regulating such activities by the public. As the Supreme Court held in *Garcetti*,

---

F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006). However, *Garcetti* also held that the First Amendment does not protect a government employee from discipline based on speech made pursuant to the employee's official duties. As long as public employees speak as citizens about matters of public concern, they may face only those restrictions that are necessary for their employers to operate efficiently and effectively. *See Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois*, 391 U.S. 563, 88 S. Ct. 1731 (1968); *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684 (1983). However, when public employees make statements pursuant to their official duties, they do not speak as citizens for First Amendment purposes and receive no constitutional protections against employer discipline for their speech. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).

The crux of the case before me lies within two distinct lines of inquiry, which both Plaintiff and Defendants confound. The first issue is whether elected officials' speech is entitled to First Amendment protections in the wake of *Garcetti*'s restrictions on public employees' speech. In other words, the question is whether elected officials are sufficiently similar to public employees, triggering *Garcetti* and depriving them of First Amendment protections when they speak pursuant to their official duties. The second issue is whether elected officials who are retaliated against by their peers, even in the absence of *Garcetti*'s constraints on public employee's First Amendment rights, have *any* recourse under the First Amendment. In their brief in support of motion for summary judgment, Defendants ignore the first issue. Plaintiff's brief in opposition to motion for summary judgment ignores the second issue. I address both in turn.

1. **The Applicability of *Garcetti* to Elected Officials' Speech**

The issue before the Supreme Court in *Garcetti* was whether "the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties." *Id.* at 413. The respondent, a deputy district attorney, relayed

to his supervisors concerns about what he perceived to be misrepresentations in a search warrant affidavit. *Id.* at 414. He followed up by preparing an internal memorandum reiterating his concerns and recommending dismissal of the case. *Id.* The respondent claimed that he was subsequently subjected to retaliation because of his criticisms of the warrant. *Id.* at 415. The Supreme Court ruled against him and held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. In reaching this conclusion, the Court reiterated that "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* 547 U.S. at 417, 126 S. Ct. 1951 (citing, *inter alia*, *Pickering v. Board of Education of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) and *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987)). The relationship between the speaker's expressions and employment is significant as "[a] government entity has broader discretion to restrict speech when it acts in its role as employer." *Id.* at 418. This is because of the government's need to have a significant degree of control over the words and actions of its employees. *Id.* The Supreme Court explained that,

> [e]mployers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission.

*Id.* at 422-23.

Thus, the First Amendment does not protect a non-elected government official from "discipline based on . . . expressions made pursuant to official responsibilities." Id. at 424.

Few cases nationally have addressed *Garcetti*'s applicability to *elected* government

7

officials. Even the Third Circuit in this very case emphasized that it "d[id] not decide whether *Garcetti* is applicable to elected officials' speech or not." *Werkheiser*, 780 F.3d at 177. Those district and circuit courts that have addressed the issue, however, are split.

A few courts have found that *Garcetti* applies to elected officials acting in their official capacity. *See, e.g.*, *Hartman v. Register*, No. 1:06-CV-33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007) ("*Garcetti* . . . makes clear that speech made pursuant to an individual's official duties is not protected by the First Amendment. The distinction between the public employee in *Garcetti* and an elected official . . . is inconsequential."); *Hogan v. Twp. of Haddon*, No. 04-2036, 2006 U.S. Dist. LEXIS 87200, 2006 WL 3490353 (D.N.J. Dec. 1, 2006), *aff'd on other grounds*, 278 F. App'x 98 (3d Cir. 2008) (concluding that defendant was entitled to qualified immunity on plaintiff's First Amendment claim because *Garcetti* applies to elected officials' speech and speech made in plaintiff's capacity as elected official was therefore not entitled to First Amendment protection).

The majority of courts, however, have found *Garcetti* inapplicable to elected officials. *See, e.g.*, *Melville v. Town of Adams*, 9 F. Supp. 3d 77, 102 (D. Mass. 2014); *Conservation Comm'n of Town of Westport v. Beaulieu*, No. CIV.A. 07-11087-RGS, 2008 WL 4372761, at *4 (D. Mass. Sept. 18, 2008); *Willson v. Yerke*, No. 3:10-CV-1376, 2013 WL 6835405, at *9 (M.D. Pa. Dec. 23, 2013), *aff'd*, 604 F. App'x 149 (3d Cir. 2015); *see also Siefert v. Alexander*, 608 F.3d 974, 991 (7th Cir. 2010) (Rovner, J., dissenting in part) (arguing that "[n]either this court nor the Supreme Court . . . has ever held that the[] decisions limiting the speech of public employees can be applied to elected officials' speech"); *Jenevin v. Willing*, 493 F.3d 551, 558 (5th Cir. 2007) ("We are persuaded that the preferable course ought not draw directly upon the *Pickering-Garcetti* line of cases for sorting the free speech rights of employees elected to state office.").

The Fifth Circuit's panel decision in *Rangra* also rejected rejecting *Garcetti*'s application to elected officials. *Rangra v. Brown*, 566 F.3d 515 (5th Cir. 2009). The court concluded that "[n]one of the Supreme Court's public employee speech decisions qualifies or limits the First Amendment's protection of elected government officials' speech. [On the

contrary], . . . there is a meaningful distinction between the First Amendment's protection of public employees' speech and other speech, including that of elected government officials." *Id.* at 523-24.[2]

This issue was also addressed in *Zimmerlink v. Zapotosky*, No. 10-237, 2011 U.S. Dist. LEXIS 53186 (W.D. Pa. Apr. 11, 2011), adopted, 2011 U.S. Dist. LEXIS 53189 (W.D. Pa. May 18, 2011). The court observed first that "[l]ong before *Garcetti*, the Supreme Court established that, at least with respect to political speech, elected legislators have First Amendment rights commensurate in scope with the First Amendment rights enjoyed by citizens in general." *Id.* at *5 (citing *Bond v. Floyd*, 385 U.S. 116, 87 S. Ct. 339 (1966)). In contrast, the court stated that "a public employee's interest in commenting on matters of public concern must be balanced against the government's interest as an employer." *Id.* at *7 (citing *Garcetti*, 547 U.S. at 418-20). *Garcetti*, however, did not alter *Bond*, and, therefore, "[w]hile the government has interests as an employer justifying some regulation of employees' speech, the government has no interest justifying regulation of elected legislators' speech." *Id.* at *8-9. The court concluded that,

> attempting to apply *Garcetti* to elected representatives demonstrates that *Garcetti* cannot apply to speech of elected officials. Under *Garcetti*, speech pursuant to a public employee's "official duties" is afforded no protection under the First Amendment. *Bond* recognized that elected legislators have an "obligation" to speak on political issues. Thus, if *Garcetti* applied to elected officials, speaking on political issues would appear to be part of an elected official's "official duties." But protection of such speech is the "manifest function" of the First Amendment. *Garcetti*, thus, cannot be applied to political speech of elected officials consistently with *Bond*."

*Id.* at *10-11 (internal citations omitted).

I find the reasoning in *Zimmerlink* to be persuasive. *Garcetti* did not address the speech rights of elected officials, nor did it expand the speech limitations on public

---

[2] Following the panel's determination in *Rangra*, however, the Fifth Circuit voted to rehear the case *en banc*. *See Rangra v. Brown*, 576 F.3d 531 (5th Cir. 2009). The panel's opinion was vacated. Prior to addressing the merits of the action, however, the Fifth Circuit dismissed the case as moot. *See Rangra v. Brown*, 584 F.3d 206, 207 (5th Cir. 2009).

9

employees to include elected officials. Moreover, there is a meaningful distinction between the speech of an elected official and that of a public employee. As the Third Circuit observed in this case,

> [m]any of the reasons for restrictions on employee speech appear to apply with much less force in the context of elected officials. [Plaintiff's] speech as an elected official is not subject to prior review or approval. To use *Garcetti*'s language, his speech is neither "controlled" nor "created" in the same way that an employer controls the speech of a typical public employee. And, as the Supreme Court admonished, "[p]roper application of [its] precedents ... leads to the conclusion that the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Id.* at 424, 126 S.Ct. 1951. But of course, there is no truly comparable analog to "managerial discipline" when discussing retaliation between elected officials.

*Werkheiser*, 780 F.3d at 178. Indeed, the notion that speech pursuant to a public employee's "official duties" is afforded no protection under the First Amendment would have odd results if applied to elected officials because "speaking on political issues would appear to be part of an elected official's 'official duties,' and therefore, unprotected. But protection of such speech is the 'manifest function' of the First Amendment." *Zimmerlink*, 2011 U.S. Dist. LEXIS at *10-11 (citing *Bond*, 385 U.S. at 135).

More broadly, as the Supreme Court emphasized in *Bond*, "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Bond*, 385 U.S. at 135-36. The obligation on elected officials to take positions on controversial political question ensures that their constituents are fully and adequately represented in governmental debates. *Id.* at 136-37. Thus, while the government has an interest as an employer in some regulation of its employees' speech, the same concerns do not arise in connection with speech of elected legislators because "the governmental interest in regulating speech of public employees to promote efficient operations does not apply to speech of an elected official." *Zimmerlink*, 2011 U.S. Dist. LEXIS at *9-10.

As such, I find that *Garcetti* does not apply to publicly elected officials.

## 2. Elected Official's Recourse Under The First Amendment for Retaliation

Finding that *Garcetti* is inapplicable to elected officials' speech does not end the inquiry. Rather, Plaintiff must also establish that the kind of retaliation Defendants engaged in against Plaintiff violated his First Amendment rights. As the Third Circuit has noted, not all retaliation violates the First Amendment. *See Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (noting that the First Amendment requires "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights") (citation omitted). After all, Plaintiff is not the only party in this case whose interests implicate the First Amendment and "[Defendants] may well have been exercising a competing First Amendment right to make a political statement by removing [Plaintiff]." *Werkheiser*, 780 F.3d at 178 (citing *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 545 (9th Cir.2010)).

In *Blair*, a case on which the Third Circuit relied in its *Werkheiser* decision, the Ninth Circuit found that "more is fair in electoral politics than in other contexts." *Blair*, 608 F.3d at 543. The court explained that it was expected that elected board members would have internal power struggles and "retaliate" against one another through oppositional voting. *Id.*

Plaintiff in the instant case appears to view the First Amendment as a tool that "prohibits elected officials from voting against candidates whose speech or views they don't embrace." *Id.* at 544-45. However, "this argument goes too far; the First Amendment does not succor casualties of the regular functioning of the political process." *Id.* at 545.

As the Supreme Court held in *Bond*, the "manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views of policy" and "debate on public issues should be uninhibited, robust, and wide open." 385 U.S. at 136-37. These principles have been upheld repeatedly across the country. *See Republican Party of Minn. v. White*, 536 U.S. 765, 781-82 (2002) ("The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance.") (quoting *Wood*, 370 U.S. at 395)); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 69 (2d Cir. 1999) ("One

does not lose one's right to speak upon becoming a legislator."); *Miller v. Town of Hull*, 878 F.2d 523, 532 (1st Cir. 1989) ("We have no difficulty finding that the act of voting on public issues by a member of a public agency or board comes within the freedom of speech guarantee of the first amendment. This is especially true when the agency members are elected officials."); *Wrzeski v. City of Madison*, 558 F. Supp. 664, 667 (W.D. Wis. 1983) ("Plaintiff's status as a legislator does not strip her of any rights she would otherwise enjoy under the First Amendment to speak freely or not to speak at all. . . . Courts have repeatedly analyzed freedom of speech cases in the legislative context without the use of any special First Amendment standard."). *See also DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) ("While the free speech rights of elected officials may well be entitled to broader protection than those of public employees generally, the underlying rationale remains the same. Legislators are given the widest latitude to express their views on issues of policy.") (internal quotations omitted); *Camacho v. Brandon*, 317 F.3d 153, 166 (2d Cir. 2003) (Walker, C.J., concurring) ("The Court recognized in *Bond v. Floyd* that representative democracy requires that we provide legislators broad freedom of speech.").

As the Third Circuit has noted in this very case, "nothing in *Bond* that suggests the Court intended for the First Amendment to guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics." *Werkheiser*, 780 F.3d at 181. Likewise, other circuits have held that retaliation against elected officials is largely not actionable when it is at the hands of their peers in the political arena. *See Blair*, 608 F.3d at 543; *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) ("The First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions.").

Rather, as the courts to consider the issue have concluded, elected officials who are retaliated against by their peers have limited recourse under the First Amendment when the actions taken against them do not interfere with their ability to perform their elected duties. The Ninth Circuit explained that retaliatory acts of elected officials against their own might be unlawful when their effect is "deleterious to democracy, of nullifying a popular vote" or

"depriv[ing] [an elected official] of authority he enjoyed by virtue of his popular election." *Blair*, 608 F.3d at 545 n.4. Similarly, in concluding that an elected official's First Amendment rights had not been violated, the Fifth Circuit in *Rash-Aldridge* pointed out that the retaliation had "no implication on [her] fundamental rights as an elected official." *Rash-Aldridge v. Ramirez*, 96 F.3d 117, 119 (5th Cir. 1996). As the court reasoned, the plaintiff's "capacity as an elected official was not compromised because the council did not try to remove her from her seat on the council nor take away any privileges of that office because of what she said or did." *Id.*

> The Third Circuit has recognized that both *Blair* and *Rash-Aldridge*
>
> drew an important distinction between types of retaliation against elected officials: the type of retaliation at issue in *Bond*, which impedes elected officials' ability to serve as effective representatives, and is, therefore, impermissible; and the type of retaliation at issue here, where an elected official is removed from an unrelated position that does not interfere with his or her role as an elected official and that, accordingly, does not run afoul of the First Amendment.

*Werkheiser*, 780 F.3d at 183.

Therefore, I reject Plaintiff's First Amendment retaliation claim because he has not established that Defendants interfered in any way with his right to hold his elected office. Plaintiff had been appointed Roadmaster by the same political body that made the discretionary, and permissibly political, decision to remove him. However, "despite Plaintiff's removal as [Roadmaster], he retained the full range of rights and prerogatives that came with having been publicly elected." *Blair*, 608 F.3d at 546. He was never prevented from representing his constituents or silenced by the executives who chose not to reappoint him. The Third Circuit in this case already noted that

> [t]here is no allegation here that the failure to reappoint [Plaintiff] as Roadmaster in any way excluded him from Town Supervisors' meetings, interfered with his rights, privileges, or responsibilities as an elected official, or hindered his ability to fulfill his elected duties. Indeed, the complaint indicates that although he was not reappointed as Roadmaster in January of 2013, his term as Township Supervisor did not expire until the end of that year and there is no indication that he did not fully and ably serve until the completion of his term.

*Werkheiser*, 780 F.3d at 183.

13

Experience and political reality counsel that it is not unexpected for "political officials to cast votes in internal elections in a manner that is, technically speaking, retaliatory, i.e., to vote against candidates whose views differ from their own." *Blair*, 608 F.3d at 544. Therefore, even if Defendants' actions towards Plaintiff stemmed from his outspokenness and frequent criticisms, their actions would not amount to retaliation in violation of the First Amendment. Although the First Amendment protects Plaintiff's "discordant speech as a general matter[,] ... it does not immunize him from the political fallout of what he says." *Id.* at 542. More fundamentally, the First Amendment is not a shield against the vagaries of the political process, and it is only the political process where Plaintiff should look to for recourse in this action. Plaintiff attempts to constitutionalize his political grievances against the weight of authority in this and other circuits. As a result, Defendants' motion for summary judgment will be granted as to Plaintiff's First Amendment claim.

**B.    Plaintiff's State Law Claims**

As there are no remaining claims over which this Court has original jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims, which will be dismissed without prejudice.

### IV. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment will be denied in part and granted in part.

An appropriate order follows.


September 28, 2016                                                      /s/ A. Richard Caputo
Date                                                                             A. Richard Caputo
                                                                                       United States District Judge